UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

1199 SEIU REGIONAL PENSION FUND,
*by Todd Hobler and Daniel Farberman as Trustees and Fiduciaries of the Fund*,

        Plaintiffs,

   v.

WEINBERG CAMPUS and KENNETH ROGERS,

        Defendants.

24-CV-685-LJV
DECISION & ORDER

---

On July 23, 2024, the plaintiffs—1199 SEIU Regional Pension Fund by Todd Hobler and Daniel Farberman as trustees and fiduciaries of that fund—commenced this action under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor-Management Relations Act of 1947 ("LMRA"). Docket Item 1. The complaint names two defendants: Weinberg Campus ("Weinberg"), a New York company, and Kenneth Rogers, its alleged "officer, agent, and/or managing agent." *Id.* at ¶¶ 9-10.

On September 25, 2024, after the defendants failed to appear or respond to the complaint, the plaintiffs asked the Clerk of the Court to enter a default against both Weinberg and Rogers, Docket Item 5, and the clerk did so, Docket Item 7. A week later, the plaintiffs moved for a default judgment against both defendants. Docket Item 8. This Court then set a briefing schedule on that motion, ordering the defendants to respond by October 16, 2024. Docket Item 13.

On October 8, 2024, Rogers, through counsel, "provisionally" answered the complaint. Docket Item 14; *see* Docket Item 19-2 at ¶ 29. Two days later, the plaintiffs

filed a letter stating that they had been in contact with Rogers about "the possibility . . . that the parties may resolve these claims without further judicial intervention."[1]  Docket Item 15.  "To allow [more] time for th[o]se discussions," the plaintiffs asked this Court to extend the deadline for Rogers to oppose the motion for a default judgment until the end of October.  *Id.*  This Court granted that extension.  Docket Item 16.

On November 1, 2024, Rogers responded to the plaintiffs' motion for a default judgment.  Docket Items 17 and 18.  He also moved to vacate the clerk's entry of default against him or, in the alternative, for leave to file an answer out of time and to amend his "provisional" answer "to include an affirmative defense for improper service."  Docket Item 19.  The plaintiffs then replied, asking this Court to grant their motion for a default judgment against both defendants and to deny Rogers's cross-motion.  Docket Item 21.

Several months later, Rogers notified the Court that Weinberg had "filed a voluntary petition under chapter 11 of the Bankruptcy [C]ode," contending in conclusory fashion that the bankruptcy resulted in "an automatic stay of this action [under] 11 U.S.C. § 362."  Docket Item 22.  In response, the Court issued a text order explaining that while Weinberg's chapter 11 petition indeed stayed the plaintiffs' claims against Weinberg, it did not necessarily stay the claims against Rogers.  Docket Item 23; *see Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003) ("A suit against a codefendant is not automatically stayed by [a] debtor's bankruptcy filing." (alteration and citation omitted)).  Noting that the codefendant of a bankruptcy petitioner "bears the

---

[1] The plaintiffs nonetheless "reserve[d] their rights to object to" Rogers's filing of an answer.  Docket Item 15.

burden of demonstrating . . . the need for" a stay against the codefendant, the Court held that Rogers had not met that burden.  Docket Item 23 (quoting *Mardice v. Ebony Media Operations, LLC*, 2021 WL 146358, at *4 (S.D.N.Y. Jan. 15, 2021)).  The Court therefore gave Rogers until June 27, 2025, to move for such a stay but ordered that if he did not, the Court would consider the dueling motions.  *Id.*

Rogers did not move to stay the claims against him, and the time to do so has passed.  *See id.*  The Court therefore considers the plaintiffs' motion for a default judgment against Rogers as well as Rogers's motion to vacate the entry of default against him.  And for the reasons that follow, this Court grants Rogers's motion and denies the plaintiffs' motion for a default judgment against Rogers.[2]

## **LEGAL PRINCIPLES**

Federal Rule of Civil Procedure 55 "provides a two-step process for obtaining a default judgment."  *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).  First, the plaintiff must secure the clerk's entry of default by demonstrating—"by affidavit or otherwise"—that the opposing party "has failed to plead or otherwise defend" the action.  Fed. R. Civ. P. 55(a).  Second, the plaintiff then must "seek a judgment by default under Rule 55(b)."  *Green*, 420 F.3d at 104.  "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," a default judgment may be obtained from the clerk; "[i]n all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b).

---

[2] Because the plaintiffs' claims against Weinberg are subject to the automatic stay imposed by 11 U.S.C. § 362(a)(1), *see supra*, this Court does not address the plaintiffs' motion for a default judgment as against Weinberg here.

3

"[A]fter [a] default is entered, 'the court may set aside an entry of default for good cause.'" *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (per curiam) (alteration and emphasis omitted) (quoting Fed. R. Civ. P. 55(c)). "Because Rule 55(c) does not define the term 'good cause,' the Second Circuit has established three criteria that must be assessed in order to decide whether to relieve a party from [a] default or from a default judgment." *Id.* (alterations omitted) (quoting *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir.1993)). "The[] criteria are: '(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party.'" *Id.* (quoting *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013)). Courts consider those same factors in deciding whether to enter a default judgment in the first instance.[3] *See Deep Foods Inc. v. Deep Foods Inc.*, 419 F. Supp. 3d 569, 576-77 (W.D.N.Y. 2019).

Decisions about "whether to enter [a] default judgment" or to vacate an entry of default are "committed to the district court's discretion." *See id.* at 577 (quoting *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015)); *Enron*, 10 F.3d at 95 ("The dispositions of motions for entries of defaults and default judgments and relief from the same . . . are left to the sound discretion of a district court because it is in the

---

[3] A party moving for a default judgment also must show "that the unchallenged allegations and all reasonable inferences drawn from the evidence provided establish the defendant's liability on each asserted cause of action." *LG Cap. Funding, LLC v. Accelera Innovations, Inc.*, 2018 WL 5456670, at *4 (E.D.N.Y. Aug. 13, 2018); *see Bricklayers*, 779 F.3d at 187. Because this Court denies the motion for a default judgment as to the claims against Rogers, *see infra*, and because the claims against Weinberg are stayed, the Court need not and does not reach the question of whether the complaint's allegations establish either defendant's liability.

4

best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties."). "[I]n light of the Second Circuit's 'oft-stated preference for resolving disputes on the merits,' default judgments are 'generally disfavored,' and doubts should be resolved in favor of the defaulting party." *United States v. Veeraswamy*, 765 F. Supp. 3d 168, 191 (E.D.N.Y. 2025) (quoting *Enron*, 10 F.3d at 95-96); *see also Green*, 420 F.3d at 104 (noting that "a default judgment is 'the most severe sanction which the court may apply'" (quoting *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995))). Moreover, courts "impose a less stringent standard upon the defaulting party when it seeks to vacate an entry of default rather than a default judgment." *See Phelan v. Chin*, 2012 WL 3597409, at *1 (W.D.N.Y. Aug. 20, 2012) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

## **DISCUSSION**

Rogers says that the three factors outlined above—willfulness of default, availability of meritorious defenses, and prejudice to the plaintiffs, *Bricklayers*, 779 F.3d at 186—weigh in favor of granting his motion to vacate the entry of default against him. *See* Docket Item 19-7 at 5-12.[4] The plaintiffs disagree, saying that this Court instead should grant their motion for a default judgment. *See* Docket Item 21-1 at 3-8. This Court agrees with Rogers.

---

[4] Rogers filed the same motion and memorandum of law in opposition to the plaintiffs' motion for a default judgment and in support of his motion to vacate the clerk's entry of default. *Compare* Docket Items 17 and 18, *with* Docket Items 19-1 and 19-7. For the sake of simplicity, this Court refers only to Docket Item 19-7 when referring to Rogers's arguments. Throughout this decision and order, page number in docket citations refer to ECF pagination.

5

## I. WILLFULNESS OF DEFAULT

The Second Circuit has "'interpreted willfulness, in the context of a default, to refer to conduct that is more than merely negligent or careless,' but is instead 'egregious and not satisfactorily explained.'" *Bricklayers*, 779 F.3d at 186 (alteration and some internal quotation marks omitted) (quoting *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)).

In support of his motion to vacate the entry of default, Rogers submitted an affidavit with his account of the series of events that led to his default. Docket Item 19-2. First, he says that contrary to the plaintiffs' allegations, "at the time [relevant to] this action[, he] was . . . chair of [Weinberg's] Board of Directors," but not an "employee . . . 'officer, agent, and/or managing agent'" of the company. *Id.* at ¶ 5 (quoting Docket Item 1 at ¶ 10). In fact, he says, he was "a retired self-employed business consultant who worked from [his] residence." *Id.* Therefore, he contends that the plaintiffs' attempt to serve him at Weinberg's premises "by delivering a . . . copy of the [s]ummons and [c]omplaint" to Lora Snow, Weinberg's executive secretary, was not effective: He was never served at his "actual place of business," his residence. *See id.* at ¶¶ 5-7.

Rogers nonetheless acknowledges that he received notice of the complaint when Weinberg's outside counsel, Jonathan D. Schechter, forwarded it to him on July 25, 2024.[5] *Id.* at ¶ 18. Rogers says that he "immediately asked . . . Schechter" if he "need[ed] to hire [Schechter] as [his] lawyer." *Id.* at ¶ 19. Schechter responded that

---

[5] Rogers refers several times to July 25, 2024, as the date when the plaintiffs moved for a default judgment. *See, e.g.*, Docket Item 19-2 at ¶ 25; Docket Item 19-7 at 6. This appears to be a typo: The plaintiffs did not move for a default judgment until September 25, 2024, *see* Docket Item 8; indeed, the July date makes little sense given the timeline provided in Rogers's declaration, *see* Docket Item 19-2 at ¶¶ 18-28.

6

Weinberg's Chief Executive Officer Robert Mayer should "enter into a payment plan with the" plaintiffs, and a few days later, Rogers told Schechter that Mayer "was already researching how Weinberg [had] amicably resolved" a similar action against the company "without Weinberg's needing to answer." *Id.* at ¶¶ 11, 20.  Schechter then told Rogers that "he would defend" Rogers in this action, even on a "pro bono" basis "if necessary." *Id.* at ¶ 21.  Thinking that Schechter had the situation under control—and imagining that the lawsuit might very well settle—Rogers continued to fulfill his role as Weinberg's chair.  *See id.* at ¶ 22.  Specifically, he "focus[ed]" on "trying to sell Weinberg's assets to discharge all of its debts." *Id.*

Rogers says that he did not receive notice when the Clerk of the Court entered a default against him on September 18, 2024, presumably "because . . . . it was mailed to [Weinberg's address]," not his.  *Id.* at ¶ 24.  But a week later,[6] when the plaintiffs moved for a default judgment, Mayer sent him a copy of the motion.  *Id.* at ¶¶ 25-27.  On October 8, 2024, Rogers "contacted [his current counsel,] William F. Savino, and asked for a meeting."  *Id.* at ¶ 28.  On the same day, in "hop[es] that [filing] an answer would persuade [the plaintiffs] to withdraw [their d]efault [j]udgment [m]otion at least as against [Rogers]," Rogers and his counsel "prepared [and filed an] initial [a]nswer." *Id.* at ¶ 29.

Rogers says that all this shows that his default was not willful:  While his actions may have been "negligent or careless," he says, his conduct "does not rise to the level of 'egregious.'"  Docket Item 19-7 at 7.  In contrast, the plaintiffs say that Rogers's "excuses are underwhelming" and that he has not adequately "explain[ed] his failure to

---

[6] As noted above, while Rogers refers to this motion as being filed on July 25, 2024, *see* Docket item 19-2 at ¶ 25; *supra* note 5, it was filed on September 25, 2024, *see* Docket Item 8.

7

meet the Court's deadlines or substantiate what his defense to the [plaintiffs'] action would be." Docket Item 21-1 at 6. They contend that Rogers was not just careless but that "[h]e simply ignored th[is] case . . . [in h]op[es] that . . . Schechter would handle the litigation." *Id.* And that, they say, "is just not enough to allow this Court to set aside the default against [Rogers]." *Id.*

The Court agrees with Rogers. While Rogers's behavior may not have been entirely "diligent" or "prudent," he apparently believed that as chair of Weinberg's Board of Directors, he was being represented by Weinberg's counsel. *See* Docket Item 19-2 at ¶¶ 20-21. That would seem to be a fair assumption, especially given Schechter's comments. *See id.* at ¶¶ 19-21. But because that attorney never appeared in this action—or, apparently, took any other steps to represent him—Rogers was effectively pro se until he retained his current counsel on October 8, 2024.

"[A]s a general rule a district court should grant . . . default judgment[s] sparingly and . . . set aside the entry of default freely when the defaulting party is appearing pro se." *Enron*, 10 F.3d at 96 (italics omitted). Moreover, Rogers contacted Weinberg's counsel soon after he learned about the lawsuit and had at least some reason to believe that Weinberg's counsel would protect him as well. And even if one questions Rogers's wisdom in relying so heavily on Schechter, Rogers sought to rectify his mistake within weeks of the entry of default.[7] *See* Docket Item 19-2 at ¶¶ 26-29.

---

[7] At this time—before Rogers has made the argument in any formal pleading— the Court does not reach the issue of whether he was properly served. Nonetheless, the fact that this is an open question is another reason to vacate the entry of default. *See* Docket Item 19-7 at 8; *see also O'Callaghan v. Sifre*, 242 F.R.D. 69, 72 (S.D.N.Y. 2007) ("A default judgment may not be granted . . . if the defendant has not been effectively served with process."); *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d

8

Those facts make this case very different from *Chao v. Party Rental Enters., Inc.*, 2008 WL 3851812 (N.D.N.Y. Aug. 15, 2008), upon which the plaintiffs rely. *See* Docket Item 21-1 at 4-5. In *Chao*, the lawsuit was preceded by a Department of Labor investigation in which the defendants "chose not to participate." 2008 WL 3851812, at *7. "Moreover," while the "plaintiff's counsel kept [the] defendants apprised of each aspect of the litigation once it was commenced . . . [f]or nearly six months after the complaint was filed, [the] defendants ignored in toto any obligation to respond to the litigation, contact the Court, or contact [the] plaintiff's counsel." *Id.* (italics omitted). In contrast, the period during which Rogers failed to respond is much shorter, and Rogers's failure to respond stemmed from his mistaken belief that he had counsel representing him. So unlike *Chao*, there is no "pattern of deliberate avoidance," *see id.* at *8, that would support a finding of willfulness here.

The other cases cited by the plaintiffs are likewise distinguishable. *See, e.g.*, *Guangxi Nanning Baiyang Food Co. v. Long River Int'l, Inc.*, 2010 WL 1257573, at *4 (S.D.N.Y. Mar. 30, 2010) (finding default to be willful in contract case where defendant "delayed for a substantial period of time . . . in letting [the plaintiff] know whether it was refusing or accepting the . . . shipments [at issue]"; did not respond to the plaintiff's attempts at settlement negotiations prior to entry of default; and "neglected to submit an answer . . . until more than six weeks [after] the filing of the complaint"); *Gladys Music v. Ed Smith Prods., Ltd.*, 1994 WL 705265, at *2 (N.D.N.Y. Dec. 6, 1994) (finding default willful based on the "defendants' experience with copyright infringement litigation, their

---

261, 270 (E.D. Pa. 2014) (stating that a clerk's entry of default "is valid only if the defendant was properly served").

representation by counsel, and the fact that . . . plaintiffs notified the . . . defendants at least twice of their intention to seek default judgment"); *FEC v. Beatty for Cong. Comm.*, 1987 WL 14658, at *1-2 (S.D.N.Y. Oct. 23, 1987) (finding default willful where pro se defendant failed to file an answer for "five months" and did "not claim that his default was occasioned by difficulties in finding counsel").

Instead, this case is more akin to *Elohim EPF USA, Inc. v. 162 D & Y Corp.*, 2021 WL 2292682 (S.D.N.Y. June 4, 2021). There, the defendants said that their default was the result of a "miscommunication" between corporate and outside counsel about who would handle the litigation; the defendants "did not notice th[e] mistake until they were in default, and upon noticing, . . . retained . . . counsel who then entered a notice of appearance." *Id.* at *2. While the court found that the defendants had made a "serious mistake" and were "at least negligent," it nonetheless held that the delay was "not willful" and vacated the entry of default.[8] *Id.* at *3. The same is true here.

The first factor therefore weighs in favor of Rogers.

## II.   AVAILABILITY OF MERITORIOUS DEFENSES

"A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." *Enron*, 10 F.3d at 98. "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.*

---

[8] In fact, the defendants in *Elohim* took significantly longer—"nearly a year"—to rectify their mistake than Rogers did, although that case also involved other reasons for delay ("most notably . . . the COVID-19 pandemic") not present here. *See* 2021 WL 2292682, at *3.

Here, the plaintiffs assert claims against Rogers under sections 404 and 406 of ERISA.[9]  Docket Item 1 at ¶¶ 38-38, 46-47.  "[A]n individual cannot be held 'liable for corporate ERISA obligations solely by virtue of his role as officer, shareholder, or manager.'"  *Bricklayers*, 779 F.3d at 118 (quoting *Sasso v. Cervoni*, 985 F.2d 49, 50 (2d Cir. 1993)).  But sections 404 and 406 of ERISA impose liability on anyone who "act[s] as a fiduciary . . . when taking the action subject to complaint."  *Sheet Metal Workers Loc. Union No. 46 Health Fund by Milne v. T.J.V. Mech. LLC*, 2025 WL 825308, at *5-7 (W.D.N.Y. Mar. 17, 2025) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)).  The statute defines a fiduciary as one who "'exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets' or 'has any discretionary authority or discretionary responsibility in the administration of such plan.'"  *Id.* (quoting 29 U.S.C. § 1002(21)(A)).

Rogers argues that he has "at least two meritorious defenses" to those claims.  Docket Item 19-7 at 7-9.  First, he says that this Court lacks personal jurisdiction because he was not properly served.  *Id.* at 7-8.  Second, he says that he "cannot be held personally liable under ERISA for unpaid contributions to the multi-employer pension plan" because "he is not a fiduciary of the employee benefit plans and did not participate in any failure to pay the plans."  *Id.* at 8-9.  He submitted a declaration

---

[9] The plaintiffs assert two additional claims in their complaint:  The first—brought only against Weinberg—is under both the LMRA and ERISA, *see* Docket Item 1 at ¶¶ 15-23, while the fourth asks this Court to enjoin both defendants from violating ERISA and the LMRA, *see id.* at ¶¶ 49-55.  But neither the plaintiffs nor Rogers refer to the LMRA in discussing his potential meritorious defenses or lack thereof.  *See* Docket Item 19-7 at 6-8; Docket Item 21-1 at 6-7.

attesting to facts in support of these arguments, alleging that his work address is the same as his home address and that he "never had operational or cash management responsibility for Weinberg or control over when payments were made and to whom." *See* Docket Item 19-2 at ¶¶ 5-6, 10-14.  The person "responsible" for those duties in 2023 and 2024, he says, was Mayer.  *Id.* at ¶ 12.

The plaintiffs counter that they properly served Rogers under N.Y. C.P.L.R. § 308(2) at the place "where he worked," and that Rogers was indeed the person with "actual and apparent authority over the operations" for Weinberg at the relevant times. Docket Item 21-1 at 6-7.  And they argue that Rogers's "conclusory" defenses are not enough to justify vacating default here.  *Id.* at 5-7.

The Court disagrees that Rogers has offered only conclusory denials:  As just noted, he submitted a declaration attesting to specific facts in support of his defenses. *See id.* at ¶¶ 5-6, 10-14.  So Rogers has raised two potentially meritorious defenses. Whether either defense carries the day is, of course, a different question—one that depends on the resolution of factual disputes.  But it would be "inappropriate" to resolve those factual disputes in this posture.  *See King Vision Pay Per View v. Esposito*, 2002 WL 31413806, at *1 (S.D.N.Y. Oct. 24, 2002) (granting motion to vacate default judgment where defendant "presented a potentially meritorious defense" that "raise[d] a material issue of fact").  So the second factor also weighs in favor of Rogers.

### III.    PREJUDICE TO THE PLAINTIFFS

To establish prejudice in the default context, a plaintiff must do more than show that vacating a default or denying a default judgment "will delay . . . recovery on the claim or will require [the plaintiff] to try the case on the merits and incur the attendant

costs." *Smith v. Farm Fam. Cas. Ins. Co.*, 2010 WL 11541930, at *2 (N.D.N.Y. Jan. 25, 2010) (citing *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)). "Rather, the plaintiff must show that the default has hindered [its] ability to pursue the cause of action, which may include the loss of evidence or increased discovery difficulties." *Id.*; *see Green*, 420 F.3d at 110 ("[D]elay alone is not a sufficient basis for establishing prejudice. Something more is needed. For example, delay may thwart plaintiff's recovery or remedy . . .[,] result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." (citations and internal quotation marks omitted)).

The plaintiffs say that "[i]t would waste the time and resources for the Court to vacate the default[ and] take . . . discovery, only to learn, after all that," that Rogers is liable for the amount alleged in the complaint. Docket Item 21-1 at 7. But that argument can be made in every case when a defendant defaults, and it is not enough to support a finding of prejudice. Again, "the mere possibility that delaying the resolution of this case may defer [the p]laintiff[s'] ability to get the relief [they] seek[] in this litigation is insufficient, particularly in light of the strong policy reasons favoring resolving cases on the merits." *See Elohim*, 2021 WL 2292682, at *2. And that is particularly true because Rogers's delay in filing an answer was relatively short, a period of less than two months.[10]

---

[10] What is more, the plaintiffs' suggestion that they have substantively been prejudiced is a bit disingenuous given the fact that they filed a letter stating that they had been in contact with Rogers about "the possibility . . . that the parties may resolve these claims without further judicial intervention" and asking this Court to extend the deadline for Rogers to oppose the motion for a default judgment until the end of October. *See* Docket Item 15.

13

Therefore, all three factors weigh in favor of Rogers, and the Court grants his motion to vacate the clerk's entry of default and denies the plaintiffs' motion for a default judgment against Rogers. Rogers's "provisional" answer, Docket Item 14, is deemed his operative pleading in this action.[11]

## **CONCLUSION**

For the reasons stated above, the plaintiffs' motion for a default judgment is DENIED as to Rogers, and Rogers's motion to vacate the clerk's entry of default against him is GRANTED. The plaintiffs' claims against Weinberg remain stayed. This Court will refer the case to a magistrate judge to proceed with discovery by a separate order.

SO ORDERED.

Dated: July 11, 2025
       Buffalo, New York

                                               */s/ Lawrence J. Vilardo*
                                              LAWRENCE J. VILARDO
                                              UNITED STATES DISTRICT JUDGE

---

[11] In light of this Court's decision granting Rogers's motion to vacate the clerk's entry of default, it need not reach his alternative requests to file an answer out of time or to amend his answer. *See* Docket Item 19-7 at 10-12. In any event, Local Rule of Civil Procedure 15(a) requires that "[a] movant seeking to amend or supplement a pleading . . . must attach an unsigned copy of the proposed amended pleading as an exhibit to the motion." And Rule 15(b) further provides that "[u]nless the movant is proceeding pro se, the amendment(s) or supplement(s) to the original pleading shall be identified in the proposed pleading through the use of a word processing 'redline' function or other similar markings that are visible in both electronic and paper format." Loc. R. Civ. P. 15(b) (italics omitted). Rogers did not file any proposed amended answer here. Should Rogers wish to amend his "provisional" answer, he must comply with Local Rule 15.

14